# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**LEONARD ANDRE SCOVENS,**

    **Plaintiff,**

**vs.**                                         **CASE NO. 4:04CV383-SPM/AK**

**SGT. MARK. STEPHENS, ,**

    **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this cause pursuant to 42 U.S.C. §1983 alleging that the Defendant was deliberately indifferent to his safety needs when he placed Plaintiff in a cell with a known dangerous and racist inmate, Charles King. (Doc. 10, p.8). Plaintiff also claims that placing him in the cell with someone on a higher security and housing classification in violation of Florida Administrative Code and FDOC policy is a deprivation of liberty without due process. (Doc. 10, p.8). Defendant has filed a special report, which has been construed as a motion for summary judgment. (Doc. 23). Plaintiff has responded. (Doc. 28).

**I.     Allegations of the Amended Complaint (Doc. 10).**

Plaintiff claims that he was going to a disciplinary hearing on March 11, 2003, while incarcerated at Taylor Correctional Institution when Defendant Stephens told him that he was going to have to place him in a cell with Charles King when the hearing was over. Defendant Stephens allegedly told Plaintiff that King was likely to attack him, but that Stephens would leave Plaintiff uncuffed so that he could defend himself and that Plaintiff would not be written up if a fight ensued. Defendant Stephens also allegedly gave Plaintiff contraband (tobacco) "for his trouble." Plaintiff claims that Inmate King was a notorious member of Hells Angels, had been violent during his incarceration, was known for hating blacks (Plaintiff is black), and was on higher security and housing classification than Plaintiff. Nonetheless, Plaintiff was placed in the cell with King, the two fought immediately, and King was injured. Plaintiff was cuffed and taken to a shower stall where he was allegedly told by Defendant Stephens to lie and say that he was handcuffed when he was taken to the cell. According to Plaintiff, King was not removed from his cell and taken to medical for four hours and when he got to medical he was in serious condition, he was intubated improperly, and subsequently was pronounced brain dead. Plaintiff claims that he was told he had killed King, which upset him greatly, and he requested a psychological emergency, but was denied help. Plaintiff claims that he eventually slit his wrist open with a metal shard. He claims that he continues to experience depression and nightmares and is presently housed in solitary confinement under "maximum management."

**No. 4:04cv383-spm/ak**

## II.     Standard of Review

A district court should grant summary judgment when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." Nolen v. Boca Raton Community Hospital, Inc., 373 F.3d 1151, 1154 (11th Cr. 2004), *citing* Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).  All issues of material fact should be resolved in favor of the Plaintiff or non-moving party before the Court determines the legal question of whether the defendant is entitled to judgment as a matter of law under that version of the facts.  Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003); Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002).   The Plaintiff has the burden to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  Celotex, 477 U.S. at 322-23.  Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof.  Anderson v. Liberty Lobby, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986).  "For factual issues to be considered genuine, they must have a real basis in the record."  Mize v. Jefferson City Board of Education, 93 F.3d 739, 742 (11th Cir. 1996).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  Owen v.

**No. 4:04cv383-spm/ak**

Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

While a moving party is not required to support his motion for summary judgment with affidavits, Celotex, supra at 323, the facts stated in uncontradicted affidavits or other evidentiary materials must be accepted as true for purposes of summary judgment. Gauck v. Meleski, 346 F.2d 433, 436 (5th Cir. 1965).

**III.    Defendant's Rule 56(e) evidence (doc. 23)**

    a)    Investigative Report (exhibit A)

Background Narrative: Sgt. Stephens reported hearing a loud noise coming from the CM cell housing inmates King and Scovens. Upon approaching the cell he observed them striking each other with clenched fists. He ordered them to stop and they complied. King then fell to his knees and refused all orders to submit to handcuffing. Scovens submitted to handcuffing and was removed from the cell to prevent any further injury to King. Young, King and Humphries responded to the cell front and after their attempts to get King to submit to handcuffing failed, a cell extraction team was formed. The team entered the cell and without using force handcuffed King. He was evaluated by medical staff and lifeflighted to Jacksonville due to sustaining serious head trauma. Preliminary reports form hospital staff are that he has been placed on life support. FDLE was contacted and responded per MOU. The cell was secured and processed by FDLE as a crime scene.

There were four witnesses to the incident listed on the report: Mark Stephens, Perry Humphries, John King, and Rebecca Young.

**No. 4:04cv383-spm/ak**

The case summary was prepared by Inspector Raleigh Sistrunk. He interviewed all officers and inmate witnesses. Officer Humphries said that when he first observed Inmate King he was bleeding from his mouth and eyes, there was blood on the floor and walls, and King refused to submit to handcuffs and went to his bunk. The cell extraction team was assembled and removed King, who was restrained without incident, placed on a stretcher and carried to the emergency room. Nurse Rebecca Young noted initially a visible injury to King's jaw, his face was covered in blood, and he was making gurgling noises. He was first lying on the floor, then began thrashing around, striking his head on the wall and floor causing additional lacerations. He was incoherent, dazed, unresponsive, and attempted to stand up repeatedly falling backward and striking his head on the floor or wall. Blood was left on the wall and floor after each additional strike. He was combative in the emergency room and incoherent, and the EMS was called to take him to Shands/Jacksonville via helicopter. The last update on King indicated that he was on life support with no brain activity.

Several inmates were contacted who claimed to have witnessed the incident and a number of allegations were made which included "staff put Inmate Scovens in the cell to beat up King, staff throwing water on King, staff had inmates to make weapons for them, and staff open doors to allow inmates to fight. Agent Rominger related that some of these allegations are part of her criminal investigation. As soon as possible, she would provide a written report so the allegations she is not addressing can be officially reported and addressed." [None of the inmate witnesses are named in Sistrunk's report,

**No. 4:04cv383-spm/ak**

their precise statements are not included, and Agent Rominger's report was not provided by the Defendant in support of his motion].

Scovens was interviewed and made a statement in the presence of his attorney:

> Scovens indicated Sergeant Mark Stevens [sic] paid him one pack of Top tobacco to beat up Inmate King. Stevens told him that King was crazy and may swing on him or have a weapon and that he would not receive any discipline for fighting King. Scovens related that Officer Christopher Lago and Officer L. Hazen were aware of the Stephens instructions and escorted him to King's cell un-handcuffed. Upon being placed in the cell, King asked him if the officer's were gone, then swung a clinched fist at Scovens. Scovens indicated that the punch missed. Scovens related that he and King fought. At one point, King went to the floor. Scovens related that he struck King several more times and then kicked King approximately twice in the face.

Inmate King was removed from life support at his mother's request on March 29, 2003, and died on April 9, 2003. An autopsy was performed. A final report was to be submitted later by FDLE Special Agent Betty Rominger.

b) <u>Disciplinary report (exhibit B)</u>

A hearing was held on the disciplinary charge for fighting on April 16, 2003, and Plaintiff refused to appear. The hearing had been delayed because Plaintiff was transferred to Florida State Prison and they were awaiting a statement from Inmate Charles King, who ultimately died. Plaintiff received 30 days close management.

c) <u>DOC Emergency Room Record (exhibit C)</u>

Plaintiff was seen on March 11, 2003, within a few hours of the altercation with Inmate King and examined by Dr. Vizcarro. He had no visible "open areas" on hands, head or body, and only a small edematous area on the right temporal area and bruised area inside his lower lip. Approximately six hours later on the same day he was brought

**No. 4:04cv383-spm/ak**

back in with a 5 to 6 inch laceration down the center of his left forearm, self-inflicted, and he was immediately transferred to Florida State Prison.

  d)  <u>Affidavit of Mark Stephens (exhibit D)</u>

  Defendant Stephens recalls taking Plaintiff from his cell to the disciplinary hearing on March 11, 2003, and he recalls his being restrained during the entire time until after the hearing when he was placed in Cell #F1-202 with Inmate King. Defendant Stephens denies discussing that Plaintiff would be placed in the cell with King, denied telling him to fight with King, denied giving him tobacco. Defendant Stephens stated that Plaintiff had not been in the cell with King for more than one minute when he heard a disturbance, saw them fighting with closed fists, and ordered them to stop, which they did. Inmate King slumped to the floor, Scovens submitted to handcuffing, and was removed to a shower stall without further incident. He denies any further contact with Plaintiff, who was transferred to FSP later that day, and he informed Nurse Young and his supervisor of the incident. He denies having any previous problems with King or having any knowledge that fighting might occur between King and Plaintiff.

## IV. Plaintiff's Response (doc. 28)

  Plaintiff claims in his Declaration, made under penalty of perjury, that there are genuine issues of material fact in dispute, specifically that Officers Hazen and Christopher Lago escorted Plaintiff to the cell, and Officer Hazen heard Defendant Stephens tell Plaintiff that he would be placed in a cell with Charles King, but neither of these persons' statements were submitted with Defendant's motion. Plaintiff also calls

**No. 4:04cv383-spm/ak**

attention to the inmate witnesses who stated they were aware of a conflict, but whose statements were not submitted with the motion as part of the investigation report.

Plaintiff has also submitted a Statement of Disputed Factual Issues:

1) Whether Defendant met with the Plaintiff at 8 a.m. on March 11, 2003, and told him he'd be attacked by C. King when moved to cell F1-201, which defendant assigned him to.
2) Whether Defendant paid Plaintiff a pack of tobacco to enter the cell.
3) Whether the Plaintiff was in restraints when moved to cell F1-2-1.
4) Whether defendant escorted plaintiff to cell F1-2-1.
5) Whether the defendant had been in conflict with inmate Charles King.

**V.    Analysis**

It is not the Court's role to weigh conflicting evidence or make credibility determinations. Mize v. Jefferson City Bd. of Education, 93 F.3d 739 (11th Cir. 1996). Defendant has provided his affidavit denying the allegations made by Plaintiff, who has supplied his "declaration," sworn under penalty of perjury, where he insists that his version of the facts is true. For purposes of summary judgment, the non-movant's evidence is to be accepted as true. Mize, at 739. As Plaintiff notes, there are a number of facts in dispute which would require the Court to make a credibility determination or weigh the evidence which is beyond the scope of a motion for summary judgment. The Court also agrees with Plaintiff that there are a number of gaps in Defendant's evidentiary submission such as affidavits from officers and inmates who allegedly witnessed or otherwise had personal knowledge of the events in question. Indeed, Inspector Raleigh Sistrunk noted in his report a number of inmates who corroborated Plaintiff's version of the facts, yet their statements are not included in the investigative report, which is not the final report. There is no information about the criminal investigation that ensued, referenced in the internal investigation report, and which was

**No. 4:04cv383-spm/ak**

clearly going to address the allegations made against Defendant Stephens. (See Investigative Report, p. 3). Further, according to the disciplinary report filed against Plaintiff, he received 30 days close management for fighting only. Given that Charles King died, there are obviously other facts not presently before the Court to explain why Plaintiff was not charged with his death. Since Plaintiff alleges wrongdoing on the part of the Defendant that resulted in his having to defend himself, it is not implausible that all or some degree of his claims were found to be true and operated to mitigate the consequences of his actions.

The allegations raised by Plaintiff are serious. The incident which occurred resulted in the death of an inmate and the attempted suicide of another. Defendant has offered an incomplete investigative report, which refers to statements not provided which appear to corroborate Plaintiff's version of what happened. The names of the inmates interviewed were not listed which would have given Plaintiff an opportunity to obtain their affidavits. The report also refers to a criminal investigation and a final report, including autopsy results, which were not included in the evidentiary submission. Defendant has offered no corroborating affidavits to support his general denial that he had no forewarning that King and Scovens would fight, and he does not even address Plaintiff's contention that he should not have been placed with someone under the close management classification of King regardless of his known propensities for violence and racial hatred.

Plaintiff sought several items in discovery which would have been relevant to the issues before the Court (docs. 29 and 30), but because he failed to follow the directions for conducting discovery set forth in the Court's Order of September 13, 2005, (doc. 25),

**No. 4:04cv383-spm/ak**

these efforts failed.  (See Doc. 33).  Should the District Judge adopt the recommendations set forth herein, this case should go forward and Plaintiff be given another opportunity to conduct discovery, perhaps with more precise direction or perhaps with the assistance of appointed counsel.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's Motion for Summary Judgment (doc. 24) be **DENIED**, and this cause remanded for further proceedings, including entry of a discovery and trial schedule.

**IN CHAMBERS** at Gainesville, Florida, this **24th** day of May, 2006.

**s/ A. KORNBLUM**
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 4:04cv383-spm/ak**